Agnes, A.J.

INTRODUCTION

This is a civil action brought by Providence and Worcester Railroad Company (PWRR) against Michael Rivard (Rivard) and Starr Scrap Metal, Inc. (Starr) seeking a preliminary injunction to prevent Rivard and Starr from continuing construction that would block an easement granted to PWRR on the property. After the parties were given an opportunity to present witnesses, they agreed to submit the case on the basis of affidavits. Based on the affidavits I make the following preliminary findings of fact.

FACTUAL BACKGROUND

PWRR owns a land in Worcester, Massachusetts that it has used for rail purposes, such as loading and unloading rail cars, for over one hundred years (the “Premises”). Upon arrival at the Premises, the customers will usually unload the material via trucks for transport by rail to its respective destinations. Over the last ten years, customers of the Premises have averaged three to four trips for the purpose of loading the material onto the rail cars. These customers access the Premises via Kansas Street in Worcester. Between the end of Kansas Street and thePremises lies a comer of properly owned by Rivard. Rivard’s company, Starr, uses this property. To provide access to the Premises, an easement exists over Rivard’s land bordering Kansas Street. This easement has existed in the chain of title of the property going back at least to the Penn Central Railroad’s ownership in 1971. Rivard’s predecessor in interest executed a “Confirmatory Grant of Easement” (the “Grant”) in 1995, which described the scope of the easement. The Grant provided PWRR several rights. First, PWRR received the right to “enter upon and pass and repass over the easement premises at all times hereafter for the purpose of inspecting, repairing, maintaining, renewing and reconstructing Grantee’s retaining wall... Second, it provided PWRR the ’’right to clear, grade and pave the easement premises so as to allow Grantee the right to pass and repass on foot or with trucks or with other vehicles." Third, and most importantly, it provided PWRR the “right to pass and repass over the easement premises for the purpose of accessing, by foot or with tmcks or other vehicles, Riley, Kansas and Cambridge Street from [PWRR’s] Railroad yard on its adjoining property to the north of the easement premises.”
In early December 2004, the Defendants began construction on an expansion of the existing building on their property. This construction blocked the easement. Without any prior notice to PWRR, the Defendants began excavation and pouring footings on the easement, which will prevent access to the Premises. PWRR notified the Defendants via a letter dated December 16, 2004 that the construction was improper and should cease immediately. The Defendants’ response was to demand that PWRR immediately refrain from allowing its customers to access the Premises using the easement. The Defendants allege that the easement is limited to PWRR’s use only, not its customers. The Defendants have notified PWRR that they intend to erect a fence over the easement, preventing access to the Premises.

DISCUSSION

In deciding whether to grant an application for a preliminary injunction, the court must determine the moving party’s chance of success on the merits and whether denial of the request for the injunction will subject the moving party to a substantial risk of irreparable harm. Packaging Industries Group, Inc. v. Cheney, 380 Mass, 609, 617 (1980).

A. Likelihood of Success on the Merits

The questions in the present case are whether the scope of the easement described in the 1995 Confirmatory Grant allows the Defendants to build over or obstruct, by way of a fence, the easement and whether the Grant prohibits the use of the easement to that of PWRR only, not its customers.
The pertinent parts of the Grant are: “(2) The right to pass and repass over the easement premises for the purpose of accessing, by foot or with trucks or other vehicles, Riley, Kansas, and Cambridge Streets from Grantee’s railroad yard on its adjoining property” and “(3) The right to relocate the fence currently existing on the easement premises ... so as to enable Grantee to enjoy the full width of the easement premises for the purposes intended and stated hereinabove.” This language expressly grants two rights: first, vehicles have a right to use the easement to access the Premises as the language specifically mentions “trucks or other vehicles”; second, the right of PWRR to remove an encumbrance that would prevent it from “enjoyfing] the full width” of the easement. The Grant specifically allows PWRR full access to the easement, the Defendants’ proposed fence would not only limit access but would obviously bar access altogether. The Defendant’s intention to erect a fence over the easement would be a clear violation of the Grant.
As for the vehicular traffic, the Defendants’ contention is that such traffic must be limited to that of PWRR *82 and not of its customers. Here the language of the Grant is not explicit as to whether the customers were granted access to the Premises. However, it is well settled that “when an easement is created by deed, but its precise limits or location are not defined, the location and use of the easement by the owner of the dominant estate for many years, acquiesced in by the owner of the servient estate, will be deemed to be that which was intended to be conveyed by the deed.” Labounty v. Vickers, 352 Mass. 337, 345 (1967). See Kressler v. Bowditch, 223 Mass. 265, 268 (1916); Pion v. Dwight, 11 Mass.App.Ct. 406, 412 (1981). The Defendant does not dispute PWRR’s assertion that for some years the Premises and the easement in question has not only been used by PWRR but by its customers as well. Nor does the Defendant indicate that at any time in the existence of the easement did any of its predecessors in interest object to the use of Premises by PWRR’s customers. The fact that the subject activity has been occurring for years without objection is evidence that the use complained of was intended by the grant. Randall v. Grant, 210 Mass. 302, 304 (1911). Therefore, given the acquiescence of the Defendant over many years to the use of the easement by PWRR and its customers, it is appropriate to conclude that the parties to the Grant intended it to be used by PWRR’s customers as well. The Defendant’s reliance on Bergh v. Hines, Jr. is misplaced for there the Court stated that “the extent of an easement depends on the circumstances of its creation .. . when created by conveyance, the grant. . . must be construed with reference to all of its terms and the then existing condition so far as they are illuminating.” Bergh v. Hines, Jr., 44 Mass.App.Ct. 590 (1998). The Defendant offers no explanation for the fact that the parties to the 1995 Grant created the Grant with knowledge of the customers using the easement. Therefore, the Defendant acknowledges that the existing conditions at the time of the Grant were such that customers of PWRR were using the easement. The court must construe the Grant using this condition. Id, This means that the Grant is to be read to allow PWRR’s customers to use the easement.
In light of the discussion above, there is a substantial likelihood that the plaintiff would prevail on the merits of the case.

B. Irreparable Harm

The second element the plaintiff must demonstrate in order to obtain a preliminary injunction is that, without the order, he will be irreparably harmed. Packaging Industry, 380 Mass, at 616. Damages are inadequate because a plaintiff cannot be compelled to part with his properly for a sum of money. Chesarone v. Pinewood Builders, Inc., 345 Mass. 236, 240 (1962). Furthermore, “a continuing trespass wrongfully interferes with the legal rights of the owner, and in the usual case those rights cannot be adequately protected except by an injunction which will eliminate the trespáss.” Ferrone v. Rossi, 311 Mass. 591, 593 (1942). In the present case to allow the Defendant to continue to build or erect a fence would cause the PWRR serious damage to its reputation and standing with its clients. Such encumbrances by the Defendant would prevent the Premises from being used for their intended purpose and would become nearly useless to the PWRR. A sum of money cannot cure PWRR’s goodwill with its clients and therefore an injunction is the appropriate remedy.

CONCLUSION

The request for a preliminary injunction should only be granted if PWRR is likely to succeed in its case on the merits and if failure to grant an injunction will result in it suffering irreparable harm. Based on the facts of this case, the Grant’s specific language nullifies many of the semantic issues the Defendant raises. The case law supports PWRR’s conclusion that the Grant allows its customers to use the Premises and that the proper interpretation of the language in the Grant prohibits the Defendant from encumbering the easement in any way. Failure to grant an injunction will severely damage PWRR’s goodwill with its customers and will also unlawfully interfere with PWRR’s legal rights.

ORDER

For the following reasons set forth above, the plaintiffs motion for preliminary injunction is ALLOWED. The Defendants, Rivard and Starr, are hereby enjoined from trespassing upon, hindering, encroaching or otherwise interfering with the right of access of Plaintiff or its business invitees over the easement located on 25 Kansas Road, Worcester, Massachusetts, until further order of this Court.