[No. B030448. Second Dist., Div. Four. Dec. 15, 1989.]

LORRAINE LODER, Plaintiff and Respondent, v.
CITY OF GLENDALE et al., Defendants and Appellants.

COUNSEL

Frank R. Manzano, City Attorney, and Ron R. Braden, Assistant City Attorney, for Defendants and Appellants.

Marvin E. Krakow, Paul Hoffman and Gary Williams for Plaintiff and Respondent.

OPINION

McCLOSKY, Acting P. J.—Defendants City of Glendale (City), James M. Rez and John F. Hoffman appeal from the order granting plaintiff Lorraine Loder's motion for a preliminary injunction. That order restrained defendants from enforcing the City's drug testing program pending trial.

BACKGROUND

In her original complaint for injunctive relief Ms. Loder alleged that the City's mandatory drug testing program for all newly retained employees and for all employees seeking promotion violated the right of privacy, the right of due process and the right to be free from unreasonable searches and seizures embodied in the California Constitution. Ms. Loder also alleged that the program violated the Medical Confidentiality Act contained in

Civil Code section 56 et seq. Ms. Loder further alleged that defendant Rez was then the city manager of Glendale and that defendant Hoffman was then the City's director of personnel. Defendants generally demurred. The trial court sustained that demurrer with leave to amend, ruling in pertinent part: "Alleged taxpayer shows no harm to herself financially or to her alleged constitutional rights. There is no clear showing that taxpayer funds are being illegally expended."

Ms. Loder then filed a first amended complaint in which a party denominated "Doe 41" was added as a plaintiff. In that amended complaint plaintiffs alleged the same causes of action as in the original complaint and added causes of action under the federal Constitution for violation of the right to privacy, violation of due process and violation of the right to be free from unreasonable searches and seizures. Defendants again generally demurred. In addition to opposing that demurrer, plaintiffs moved for a preliminary injunction seeking to restrain defendants from enforcing the City's drug testing program. In support of that motion plaintiffs requested the court to judicially notice six declarations which were filed in another Los Angeles County Superior Court action. Those declarations were submitted by medical and mathematical experts to demonstrate the ineffectiveness of drug testing through urine samples to evaluate job performance, the unreliability of urine testing in general and the statistically significant number of individuals who will erroneously test positive due to that unreliability. Plaintiffs offered no other evidence in support of their motion.

Defendants interposed a number of objections to these declarations including hearsay, lack of sufficient foundation, improper jurat and improper reliance on published materials. The trial court did not rule on each objection separately. Instead, the court stated that "for the purpose of this injunctive motion I will receive into evidence the . . . various declarations, for whatever they may serve."

Rather than separately opposing the plaintiffs' injunction motion, defendants argued against that motion in their demurrer to the first amended complaint. In support of that demurrer defendants purported to rely upon the declaration of one Dr. Forest S. Tennant as an expert on drug abuse and drug testing. Dr. Tennant declared that urine testing is a useful means for combating work impairment due to drug use. Defendants also submitted the declaration of Mr. Hoffman, the director of personnel for the City. Mr. Hoffman purported to document the annual costs incurred by the City due to employee drug use.

Following the joint hearing on plaintiffs' injunction motion and defendants' demurrer, the trial court initially sustained defendants' demurrer with

leave to amend on the ground, among others, that "plaintiff Doe 41 [has] no legal capacity to sue." The court then ruled that "[s]ince the complaint may be amended, the court may consider the injunction." Next, the court granted the injunction motion on the grounds that "1. The Glendale Drug testing program violates the right of privacy of Article I Section I of the California Constitution. *People v. Cahan* 44 C2d 434. The program of testing is wholesale, indiscriminate, and applies to all employees and potential employees. It is overbroad in this respect. It provides for testing without any proof that it serves a compelling interest and that testing is necessary to achieve the compelling interest established. *White v. Davis* 13 C3d (1975) 757. [¶] 2. It is a violation of the 4th amendment to the U.S. Constitution as an unreasonable search. *Schmerber v. Calif.* 384 U.S. 757. [¶] 3. The requirement that employees reveal their medical history violates the right to privacy—it is coercive in that respect. [¶] 4. The program violates the Medical Confidentiality Act set forth in CC 56, et seq. Bond: $100.00."

This appeal follows.

### CONTENTIONS

Defendants raise the following contentions on appeal:

1. "Rulings of one superior court judge are binding on another in the same case."

2. "Inadmissible declarations may not be received into evidence."

3. "Preliminary injunction may not issue on grounds which were not raised by the plaintiff."

4. "The order granting preliminary injunction should be overturned because the respondents failed to prove or plead facts demonstrating irreparable injury."

5. "The preliminary injunction should not have been issued because it is doubtful that the plaintiff will ultimately succeed."

6. "Since preliminary injunctions are denied where the public interest is involved, the order herein should be overruled."

7. "Properly designed drug testing programs do not violate the Fourth Amendment of the United States Constitution."

8. "Recent legal decisions have overturned illegal challenges raised by the respondents."

9. "Since there is no constitutionally-protected right to public employment, the injunction should not have issued because of the public benefit doctrine of Civil Code § 3423 and CCP § 526."

## DISCUSSION

Each of the defendants' contentions is directed to establishing that the trial court abused its discretion by issuing the preliminary injunction. In *IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69-70 [196 Cal.Rptr. 715, 672 P.2d 121], the court set out the following standard for reviewing preliminary injunction orders: ■ "The law is well settled that the decision to grant a preliminary injunction rests in the sound discretion of the trial court. [Citations.] As this court explained in *People* v. *Black's Food Store,* [(1940)] 16 Cal.2d [59] at page 61 [105 P.2d 361]: 'The authorities are numerous and uniform to the effect that the granting or denial of a preliminary injunction on a verified complaint, together with oral testimony or affidavits, even though the evidence with respect to the absolute right therefor may be conflicting, rests in the sound discretion of the trial court, and that the order may not be interfered with on appeal, except for an abuse of discretion. [Citations.]'

"A trial court will be found to have abused its discretion only when it has '"exceeded the bounds of reason or contravened the uncontradicted evidence."' [Citations.] . . .

■ "This court has traditionally held that trial courts should evaluate two interrelated factors when deciding whether or not to issue a preliminary injunction. The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued. [Citations.] In *Continental Baking* [*Co.* v. *Katz* (1968) 68 Cal.2d 512, 527 (67 Cal.Rptr. 761, 439 P.2d 889)], this court explained the theory behind this two-pronged test: '"[By] balancing the respective equities of the parties, [the court] concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him."' [Citation.]"

■ We first address defendants' contention that "[t]he order granting preliminary injunction should be overturned because the respondents failed to prove or plead facts demonstrating irreparable injury." Because this contention has merit, we reverse.

■ "'To qualify for preliminary injunctive relief plaintiffs must show irreparable injury, either existing or threatened.'" (*City of Torrance* v.

*Transitional Living Centers for Los Angeles, Inc.* (1982) 30 Cal.3d 516, 526 [179 Cal.Rptr. 907, 638 P.2d 1304].) To satisfy this requirement it is incumbent upon the plaintiff to present *evidence.* (*Ibid.*)

 In analyzing this contention we must first determine in whose name this injunction issued. As described above in the first amended complaint, Ms. Loder and Doe 41 were denominated plaintiffs. In that unverified pleading plaintiffs allege that "plaintiff Doe 41 . . . is a current employee of the City of Glendale and . . . subject to Defendants' drug testing program." We cannot, however, consider this individual's status for purposes of determining the propriety of the preliminary injunction order for at the time the court rendered that order, the court also sustained defendants' demurrer on the ground that plaintiff Doe 41 has no legal capacity to sue. Since that employee was not a party to the action we cannot consider his or her alleged status in reviewing the injunction order.

Moreover, even if that individual could be considered in determining whether an injunction should issue, plaintiff's failure to present *any* evidence that that unnamed party, Doe 41, was in fact an employee or was affected by the drug testing program precludes that party from being entitled to an injunction.[1]

The showing with respect to Ms. Loder is also inadequate. In their first amended complaint, plaintiffs allege that Ms. Loder is "a taxpayer living in the City of Glendale . . . ." While Ms. Loder's alleged taxpayer status is sufficient to provide her with standing to bring this action, it is not sufficient to entitle her to a preliminary injunction. The Supreme Court opinion in *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277 [219 Cal.Rptr. 467, 707 P.2d 840], and the subsequent Court of Appeal opinion in *Cohen* v. *Board of Supervisors* (1986) 178 Cal.App.3d 447, illustrate this point. Both opinions review an order denying a preliminary injunction to restrain defendants from enforcing an ordinance requiring a permit to operate an escort service.

Initially, the Court of Appeal in *Cohen* reversed the trial court's order concluding that the ordinance was preempted by state law. The Supreme Court held that in so doing the Court of Appeal erroneously limited its review to whether the plaintiffs had established a likelihood of success on the merits thereby ignoring whether the interim harm to the plaintiffs outweighed the interim harm to the defendants. (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 289.) The Supreme Court then remanded the matter

---

[1] It is worth noting that only plaintiff Loder is named on the respondent's brief and counsel state their appearance for the singular "plaintiff/respondent." Further, no attempt is made to support the preliminary injunction order due to the existence of "Doe 41." Thus, only plaintiff Loder is a party respondent to this appeal.

to the Court of Appeal to determine whether the interim-harm prong supported the trial court's ruling. (*Id.,* at p. 304.)

Upon remand, the Court of Appeal individually analyzed the interim harm to each of the two plaintiffs to determine whether that factor had been met. With respect to plaintiff Cohen the court explained that his "interest appears to be limited to his taxpayer's pocketbook, an interest which is sufficient to confer statutory standing to maintain this action and bring it to a final judgment permanently enjoining unlawful expenditures [citation] but which to our knowledge has never been held to substitute for the high degree of existing or threatened injury required for the *prejudgment* injunctive relief sought here." (178 Cal.App.3d at p. 454.) Accordingly, the court affirmed the order denying the preliminary injunction motion.

Under this reasoning, Ms. Loder's status as a taxpayer by itself is insufficient to entitle her to a preliminary injunction. Even assuming, however, that Ms. Loder's alleged taxpayer status was otherwise sufficient to support a preliminary injunction, we must still reverse the order in the present case for Ms. Loder failed to present any evidence to satisfy the requirement of establishing that she was, in fact, a current taxpayer.

■ Ms. Loder argues that she sufficiently established interim harm because "the vindication of privacy rights threatened by testing justifies injunctive relief." Stated another way, she urges that "[w]here constitutional interests are threatened, irreparable injury exists which warrants injunctive relief." None of the cases on which Ms. Loder relies stand for such a broad proposition.

First, Ms. Loder's reliance on *Elrod* v. *Burns* (1976) 427 U.S. 347 [49 L.Ed.2d 547, 96 S.Ct. 2673], is misplaced. There, the plaintiffs sued to restrain the defendant sheriff from enforcing a patronage policy under which employees of his office were required to affiliate with his political party in order to retain their jobs. The court concluded that the Court of Appeals correctly determined that sufficient injury existed to warrant the issuance of a preliminary injunction. The court reasoned that under the patronage system "[i]t is clear . . . that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (*Id.* at p. 373 [49 L.Ed.2d at p. 565].) Nowhere did the *Elrod* court suggest that constitutional violations other than those offending the First Amendment automatically amount to irreparable injury. Nor did the *Elrod* court hold that a plaintiff need not demonstrate that her constitutional rights were being threatened in order to obtain a preliminary injunction.

In *American Booksellers Assn., Inc.* v. *Superior Court* (1982) 129 Cal.App.3d 197 [181 Cal.Rptr. 33], the court explained the special treatment afforded the consideration of violation of First Amendment rights for purposes of obtaining preliminary injunctions, concluding that a preliminary injunction should issue to restrain the defendant cities from enforcing an ordinance restricting the display of alleged pornographic materials. Initially, the court determined that these ordinances were overbroad and therefore violative of the First Amendment. Next the court concluded that the plaintiffs demonstrated irreparable injury sufficient to entitle them to a preliminary injunction. In so deciding, the court alluded to the fact that where "a statute is overbroad on its face and invades areas of free expression protected by the First Amendment, its mere existence on the books may exert a chilling effect on protected speech. [Citation.] In such cases traditional rules of standing do not apply. [Citations.]" (129 Cal.App.3d at p. 206.)

Based upon this reasoning the court explained that "[t]he irreparable harm which mandates issuance of the preliminary injunction in the instant case is the pervasive chilling effect which the ordinances have on the exercise of free speech, and is not limited to the [plaintiffs] before the court." (129 Cal.App.3d at p. 206.)

In contrast to these First Amendment cases, in the present case plaintiff has not claimed that she has standing to assert the irreparable injury of nonparties for purposes of obtaining a preliminary injunction. Instead, as discussed above, while plaintiff's alleged status as taxpayer affords her standing to maintain this action, her harm for preliminary injunction purposes is limited to defendants' alleged improper use of tax funds. This monetary harm is insufficient to justify the issuance of a preliminary injunction.

Next, plaintiff's reliance on *Zepada* v. *United States I.N.S.* (9th Cir. 1983) 753 F.2d 719 is misplaced. There, the court concluded that the individual plaintiffs were entitled to a preliminary injunction to restrain the department of Immigration from implementing a detention policy because those individual plaintiffs "demonstrated probable success on the merits by providing evidence of a pattern of INS violations of the fourth amendment. They also demonstrated a possibility of irreparable injury by showing violations of their constitutional rights which, if proven at trial, *could not be compensated adequately by money damages* and by showing that the INS was reasonably likely to continue those practices. *Cf. L.A. Coliseum,* 634 F.2d at 1202 (no showing of irreparable harm when losses could be compensated by money damages). The individual plaintiffs also met the alternative formulation of the test by first raising serious questions concerning INS

practices violative of their fourth amendment rights." (*Id.* at p. 727, italics added.)

Again, in *Zepada* the individual plaintiffs demonstrated that money damages were inadequate compensation because *their* own constitutional rights were threatened. Here, plaintiff made no such showing.

Similarly, plaintiff's citation to *Long Beach City Employees Assn.* v. *City of Long Beach* (1986) 41 Cal.3d 937 [227 Cal.Rptr. 90, 719 P.2d 660], is unavailing. There, the court concluded that the defendant city violated the constitutional rights of its employees by requiring that they undergo lie detector tests. Nowhere did the court discuss whether the plaintiff had established sufficient irreparable injury to entitle it to a preliminary injunction. The court did note, however, that the plaintiff employees' association had standing to raise the privacy interests of its members. (*Id.* at p. 941, fn. 3.) In the present case it is plaintiff's inability to assert the rights of those individuals whose constitutional rights are allegedly violated by the subject policy that prevents her from demonstrating sufficient injury to obtain a preliminary injunction.

Finally, plaintiff's reliance at oral argument upon *American Academy of Pediatrics* v. *Van de Kamp* (1989) 214 Cal.App.3d 831 [263 Cal.Rptr. 46], is misplaced. There, the Court of Appeal affirmed an order granting a preliminary injunction against enforcement of a statute requiring unemancipated minors to obtain the consent of a parent, guardian or of the juvenile court to have an abortion. In reaching this result, the court explained that the plaintiff health care providers had presented substantial evidence of interim harm sufficient to support the trial court's order. (*Id.* at p. 838.) In contrast to *American Academy,* in the present case there is no substantial evidence that plaintiff will suffer any interim harm if an injunction does not issue. This absence is fatal to the trial court's order. In reaching this conclusion we do not conclude or imply that the effect of a preliminary injunction obtained by a plaintiff who establishes irreparable harm must be limited to restraining the defendants in that action with respect to that plaintiff alone.

Because we conclude that Ms. Loder failed to present sufficient evidence on the necessary element of interim harm we reverse the preliminary injunction order. We therefore need not, and do not, address defendants' remaining contentions. Nothing in this opinion is intended to reflect on, or express any opinion as to the validity of the City's drug testing program or of any part of it.

The order is reversed. Each party to bear its own cost on appeal.

George, J., and Goertzen, J., concurred.

A petition for a rehearing was denied January 3, 1990.